# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

KAVOUISE JACKSON,

     Plaintiff

v.

NAPH CARE, et al.,

     Defendants

Case No.: 3:22-cv-00318-MMD-CSD

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 45

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' motion for summary judgment. (ECF Nos. 45, 45-1 to 45-18.) Plaintiff filed a response. (ECF Nos. 46, 46-1) Defendants filed a reply. (ECF No. 47.)

After a thorough review, it is recommended that Defendants' motion be granted.

## I. BACKGROUND

Plaintiff was an inmate in the custody of the Nevada Department of Corrections (NDOC) when he filed this pro se a civil rights action pursuant to 42 U.S.C. § 1983. The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC). He was released on parole in January 2023.

The court screened Plaintiff's complaint and allowed him to proceed with an Eighth Amendment deliberate indifference to serious medical needs claim against defendants: Jessica Rambur, Dr. Martin Naughton (named by Plaintiff as Notton), Melissa Mitchell (named by Plaintiff as Mitchell), Nikky, and supervisory defendants Charles Daniels, Dr. Michael Minev,

John Henley (named by Plaintiff as Hensley), Brian Williams, Perry Russell, and Kyle Olson (named by Plaintiff as Olsen). (ECF No. 4.)

The claim is based on allegations that Plaintiff was shot in his left arm in 2011, which required surgery and the placement of a metal rod. In 2015, his scar began to open up, exposing the metal rod. He avers that he was given daily bandages, saline, peroxide, antibiotics, ointment and a wrap for wound care, and ibuprofen for pain, but ultimately, he will require surgery to close the wound. He alleges that in February 2021, this treatment stopped and there was a refusal to schedule him for surgery. He claims that Defendants Rambur, Dr. Naughton, Mitchell, and Nikky knew he had an open wound on his left arm that needed treatment to keep it clean and free from infection, but they refused to do so, and instead, instructed him to merely use hand soap. He claims that as a result, he suffers from infections, bleeding, pain, and irritation. His claim against Daniels, Dr. Minev, Henley, Williams, Russell, and Olson is based on allegations that they knew he was suffering in pain because he appealed the denial of his treatment to them, and they failed to facilitate treatment for him.

Defendant Nikky was dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m). (ECF No. 36.)

Plaintiff retained counsel, Carrie Hurtik; however, Ms. Hurtik was subsequently suspended from the practice of law subject to conditions during a corresponding probationary period, and a substitution of counsel was filed with Jonathon Patterson now representing Plaintiff. (ECF Nos. 11, 21, 24.)

Defendants move for summary judgment arguing they are entitled to qualified immunity because there was no Eighth Amendment violation, Defendants Rambur, Daniels, and Henley

1    did not personally participate in Plaintiff's treatment, and there is no case that would put

2    Defendants on clear notice that their actions violated Plaintiff's rights.

3    **II. LEGAL STANDARD**

4      The legal standard governing this motion is well settled: a party is entitled to summary

5    judgment when "the movant shows that there is no genuine issue as to any material fact and the

6    movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*

7    *v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the

8    evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v.*

9    *Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome

10   of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary

11   judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the

12   other hand, where reasonable minds could differ on the material facts at issue, summary

13   judgment is not appropriate. *Anderson*, 477 U.S. at 250.

14     "The purpose of summary judgment is to avoid unnecessary trials when there is no

15   dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

16   F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose

17   of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477

18   U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that

19   one party must prevail as a matter of law"). In considering a motion for summary judgment, all

20   reasonable inferences are drawn in the light most favorable to the non-moving party. *In re*

21   *Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach*

22   *& Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the

23   nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,*

477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and

determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255;

*Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

"When the party moving for summary judgment would bear the burden of proof at trial, 'it must

come forward with evidence which would entitle it to a directed verdict if the evidence went

uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing

the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

*Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

party cannot establish an element essential to that party's case on which that party will have the

burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to

establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine

dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute

be shown to require a jury or judge to resolve the parties' differing versions of truth at trial."

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

(quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment

by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475

U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

pleadings and set forth specific facts by producing competent evidence that shows a genuine

dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Facts**

Defendants have submitted Plaintiff's offender information summary, relevant medical

records, inmate medical requests (known as "kites") and grievances in support of their motion.

(ECF Nos. 45-1, 45-2, and 45-5 to 45-16.) Their motion contains the required statement of

undisputed facts which cites the particular evidence on which they rely. *See* Fed. R. Civ. P.

56(c)(2); LR 56-1. Defendants also rely on the expert opinions of Dr. Johnny E. Bates, which

Plaintiff fails to rebut. (ECF No. 45-3.)

Plaintiff's response, on the other hand, fails to include the required concise statement

setting forth each fact material to the disposition of the motion that Plaintiff claims is genuinely

in issue, citing the particular evidence on which he relies. In fact, Plaintiff's response, filed by

counsel, merely regurgitates the allegations set forth in the pro se complaint filed by Plaintiff,

including the misspellings of some of the Defendants' names that were corrected when

Defendants answered. The response also references Defendant Nikky, who was dismissed

without prejudice under Rule 4(m), as well as claims against Dr. Kaiser, NaphCare and

WellPath, who were all dismissed on screening. (*See* ECF No. 46 at 1-2, 6-7.)

As such, the court takes the facts as asserted by Defendants, based on the evidence

submitted, as undisputed. Fed. R. Civ. P. 56(e)(2).

Plaintiff alleges that he suffered a gunshot wound to the left elbow in 2011. However,

some of his medical records indicate the gunshot wound was inflicted in 2013. This fact is not

material to Plaintiff's claim. The injury required surgery to the left elbow and placement of a

metal rod. Plaintiff further alleges the wound began to open up and the hardware became

exposed in 2015, which is some three years before he was incarcerated within NDOC.

On July 16, 2018, Plaintiff arrived at High Desert State Prison (HDSP) from the Clark

County Detention Center, and it was noted he had a gunshot wound to left elbow. (ECF No. 45-1

at 2-3.)

Plaintiff was seen on August 29, 2019, for complaints of left elbow pain, and there is a

reference that in December 2018, he refused to have the hardware removed. (ECF No. 45-2 at

89.)

On December 18, 2019, Plaintiff was given dressing supplies to keep his left arm/elbow

area covered where the metal was exposed. (ECF No. 45-2 at 89.)

In or around March 17, 2020, Plaintiff was transferred for an outside appointment with

Dr. Wulff regarding the exposed hardware. On March 18, 2020, his medical provider noted that

surgical removal of the hardware was previously recommended, and at that time (March 2020),

Plaintiff did not want any surgical intervention. There was no active drainage from the wound,

an x-ray was ordered, and Plaintiff was instructed to resume NSAIDS and follow up as needed.

(ECF No. 45-2 at 81, 45-2 at 35.)

Plaintiff filed grievance 20063104337 on July 7, 2020, stating that he had been waiting

for his keep-on-person (KOP) medication since June 13, 2020. His grievance was rejected

because he had filed more than one grievance per week, he had altered the grievance form, and

there was no remedy requested. He was instructed to decide which grievance he wanted to

pursue and resubmit only that grievance. (ECF No. 45-5 at 22.)

There is a notation on July 16, 2020, that Plaintiff refused surgery for the left arm

hardware removal. (ECF No. 45-2 at 40.)

6

On February 26, 2021, Plaintiff was given dressings, peroxide, and gauze and was instructed to send a kite for more. (ECF No. 45-2 at 89.)

On March 19, 2021, Plaintiff was seen for a "mandown" regarding substance abuse and was yelling about his wound supplies. It was noted he had not filed a kite for supplies, and he was educated on kiting. Plaintiff was provided with peroxide for wound care. (ECF No. 45-2 at 89.)

On March 22, 2021, Plaintiff sent a kite stating he had been waiting on his wound care supplies for almost 35 days. The response indicates he was issued supplies. (ECF no. 45-2 at 129.) On March 25, 2021, he sent a kite stating that he was waiting for wound care supplies and did not have ibuprofen or ointment. The response is not entirely legible but appears to indicate Plaintiff had wound care supplies. (ECF No. 45-2 at 127.)

Plaintiff filed grievance 20063119570 on April 1, 2021, stating he had been denied medical treatment and had metal sticking out of his arm. (ECF No. 45-6 at 3.) Jessica Rambur responded on April 16, 2021, that Plaintiff had not requested a remedy and no factual harm or loss was noted. (ECF No. 45-5 at 20; ECF No. 45-6 at 2, 4.)

He sent a kite on April 1, 2021, stating that he had been waiting since March 7, for wound care. The response states Plaintiff was given supplies on April 7, 2021. (ECF No. 45-2 at 128.) There is another record confirming Plaintiff was provided with dressings, gauze, and peroxide on April 7, 2021. (ECF No. 45-2 at 89.)

Plaintiff filed grievance 2006319726 on April 5, 2021, stating that he had been asking for and was denied medical attention. Jessica Rambur responded on April 16, 2021, that no factual harm or loss was included, and no remedy was requested. (ECF No. 45-5 at 19.)

Plaintiff sent kites on April 6 and 22, 2021, stating that he was waiting on his medications. His ibuprofen order was filled on April 26, 2021. (ECF No. 45-2 at 123, 125.) Plaintiff submitted grievance 20063120052 on April 14, 2021, stating that he needed his medications. Aaron Ryer responded that medical staff would follow up with him in the morning. (ECF No. 45-5 at 19.)

On April 22, 2021, Plaintiff submitted grievance 20063120413 stating that he was still waiting on his medications. Travis Fratis responded that same day that the pill call nurse had spoken with Plaintiff; that this was not an emergency; and that he should submit his request through the proper channels. (ECF No. 45-5 at 19.)

On May 5, 2021, Plaintiff was brought to the infirmary for suspicious behavior, which was actually due to a change in medication. He complained that the officers had confiscated his wound care supplies. His medical provider cleaned the wound, put on a new dressing, and provided him with wound care supplies, including dressings, peroxide, a sleeve, red bags, and a roll of plastic dressing tape to use for showering. (ECF No. 45-2 at 88.)

Plaintiff submitted emergency grievance 20063121291 on May 6, 2021, stating that he had no KOP medications and nothing for his arm, which was bleeding. He requested wound care. Travis Fratis responded that same day that it was not an emergency, but that medical had been notified and was looking into his concerns. (ECF No. 45-7 at 15.)

On May 11, 2021, he requested a wound care refill. (ECF No. 45-2 at 121.)

On May 19, 2021, his unit called medical stating that he had a bleeding wound and indicated Plaintiff needed wound care supplies. Plaintiff was given dressings, gauze, a half bottle of peroxide, and antibiotic ointment. When Plaintiff requested ibuprofen, he was advised that the clinic nurse would be notified. (ECF No. 45-2 at 86.)

Plaintiff sent another kite on May 20, 2021, asking for hydrogen peroxide and wound care. (ECF No. 45-2 at 86.) Dr. Naughton requested a consult at Reno Orthopedic Clinic (ROC) regarding the exposed hardware and hardware removal and skin grafting. This was authorized on May 26, 2021. (ECF No. 45-2 at 33.) This appointment was initially scheduled for February 2022, and it was subsequently rescheduled for March 2022 because there were not sufficient officers. (ECF No. 45-2 at 32-34.)

Plaintiff sent a kite on June 18, 2021, stating he needed "stuff" for his arm, and he was in pain. The response references supplies. (ECF No. 45-2 at 120.)

Plaintiff submitted an informal level grievance for grievance 20063121291 on June 27, 2021, stating he needed pain medication, wound care supplies and proper treatment for the metal plate sticking out of his arm. (ECF No. 45-7 at 10, 17.)

Plaintiff submitted emergency grievance 20063124101 on June 30, 2021, stating he had no cleaning supplies for his wound and was missing his KOP medications and his arm was bleeding. Sandra Benedict responded on July 1, 2021, that Plaintiff had been given iodine prep pads, island dressings, triple antibiotic ointment, a sleeve, and bags. (ECF No. 45-8 at 2.)

On July 1, 2021, Plaintiff put in an emergency request for dressing supplies. He was issued dressings, gauze, sleeves, iodine wipes, bags, and antibiotic ointment. (ECF No. 45-2 at 86.)

On July 8, 2021, Jessica Rambur responded to the informal level grievance for grievance 20063121291, partially granting the grievance and noting Plaintiff was in the process of being scheduled with ROC, and was issued wound care supplies. He was instructed to kite medical if he needed pain medication. (ECF No. 45-7 at 16.)

On July 14, 2021, he requested hydrogen peroxide, saline, bandages, ointment, cleanser, and pain medications. He saw a provider who noted there was no swelling, redness, or drainage from the wound. It was explained to Plaintiff that no wound care supplies were indicated at that time and Plaintiff was to clean the area with soap and water. He requested pain medication. The provider attempted to discuss with Plaintiff his previous refusal for an orthopedic consultation and instructed Plaintiff to kite for medications, but Plaintiff became angry and asked the provider to leave. (ECF No. 45-2 at 85.)

That same day, Plaintiff filed a first level grievance for grievance 20063121291 stating he still had not gotten wound care supplies or pain medications. (ECF No. 45-7 at 3.) Danielle Richard responded on July 26, 2021, with an improper grievance memorandum noting Plaintiff had not attached his informal grievance documentation, and he was instructed to resubmit. (ECF No. 45-7 at 2.)

Plaintiff submitted emergency grievance 20063126574 on August 14, 2021, stating he had not gotten his wound care supplies for two months, and requested Band-Aids, peroxide, dressings, and ibuprofen, and something to stop an infection. Donny Cook responded that there were no orders for wound supplies in Plaintiff's chart, and he instructed Plaintiff to use the kite process. (ECF No. 45-9 at 7.) Plaintiff submitted an informal level grievance on August 15, 2021, stating he was attempting to obtain wound care supplies for the wound on his elbow which continued to bleed. He noted that he had received hydrogen peroxide, gauze, and dressings in the past, and he was being told to use soap and water which can the potential to cause more harm than benefit. He requested gauze, hydrogen peroxide, pain medication, and dressings. (ECF No. 45-9 at 3-4.) Jessica Rambur responded on August 30, 2021, that this was a duplicate of grievance 2006312121. (ECF No. 45-9 at 2, 5.)

On September 5, 2021, Plaintiff requested wound supplies for his arm. (ECF No. 45-2 at 116.) On September 15, 2021, Plaintiff was instructed to kite the pharmacy for Tylenol and there was a discussion regarding the use of soap. (ECF No. 45-2 at 85.)

Plaintiff submitted emergency grievance 20063127938 on September 15, 2021, stating he was attempting to obtain wound care supplies, noting he was being told to use soap and water, but requested peroxide, gauze, a sling and ibuprofen. Sandra Benedict responded that Plaintiff was provided a partial bottle of wound cleanser, island dressing, a sleeve, and red bags. (ECF No. 45-10 at 2.)

On October 27, 2021, Plaintiff was issued Adaptic wound dressings, ABD pads, a tube/sleeve, and was instructed to keep the area clean and dry, apply the Adaptic dressing, cover with the ABD pad, and secure with the tube/sleeve. (ECF No. 45-2 at 79.)

On December 12, 2021, Plaintiff sent a kite stating he was supposed to have pain medications. (ECF No. 45-2 at 109.)

On December 23, 2021, there is a notation Plaintiff was issued supplies for wound care. (ECF No. 45-2 at 84.)

Plaintiff submitted grievance 20063131470 on December 24, 2021, stating he was placed in the "hole" and did not have his property, including his medical supplies to clean his wound. Shawn Fluhrer responded that medical provided dressings and soap for Plaintiff to clean the wound. (ECF No. 45-5 at 11.)

Plaintiff sent another kite on December 26, 2021, that he was waiting on his pain medications. He was instructed to pick up his ibuprofen as a KOP medication. (ECF No. 45-2 at 108.)

Plaintiff submitted another first level grievance for grievance 20063121291 on January 4, 2022, noting he had gotten the supplies, but no one helped with his pain. (ECF No. 45-7 at 8, 19.) C. Lucas responded on February 10, 2022, that Plaintiff had an upcoming appointment with the orthopedist to discuss his options and a further plan of care. (ECF No. 45-7 at 7, 18.)

Plaintiff submitted emergency grievance 20063133444 on January 26, 2022, stating he had not been able to clean his wound and was at higher risk of infection. Jeremy Coltrin responded that this was not an emergency and he had spoken to medical, and they would bring Plaintiff some supplies the next day. (ECF No. 45-11 at 4.) Plaintiff submitted an informal grievance on February 2, 2022. (ECF No. 45-11 at 3.) Jessica Rambur responded on March 15, 2022, that no factual harm or loss was noted, and no remedy was requested. (ECF No. 45-5 at 10; ECF No. 45-11 at 2.)

Plaintiff submitted emergency grievance 20063134800 on February 2, 2022, stating that his arm was bleeding, and they brought the wrong supplies. Melissa Mitchell responded that it was not a medical emergency and Plaintiff would be brought to the clinic for further evaluation and treatment that day. (ECF No. 45-12 at 2.)

On February 2, 2022, Plaintiff was seen, and his site appeared stable, and there were no signs or symptoms of infection. It was noted there was a referral to ROC pending, and he was ordered wound care supplies as well as ibuprofen and Tylenol. (ECF No. 45-2 at 78, 84.)  He was issued wound care supplies on February 9 and March 3, 2022. (ECF No. 45-2 at 84.)

Plaintiff saw Dr. Kirk Kaiser at ROC on March 21, 2022, for complaints of left elbow pain. He also expressed concern for risk of infection. Plaintiff relayed to Dr. Kaiser that the hardware had been exposed for the prior five years. On examination, there was no evidence of infection, drainage, or erythema. Plaintiff had mild tenderness surrounding the soft tissue of the

exposed hardware, but he could extend and flex at the elbow. Dr. Kaiser discussed possible surgical treatment, including removal of the hardware and wound VAC placement, but Plaintiff stated he was going to be released from prison in approximately 80 days. Dr. Kaiser ultimately said he would follow-up with Plaintiff on an as-needed basis if concerns arise once he was released for surgical management. (ECF No. 45-2 at 19-20.)

On March 24, 2022, wound care supplies including ABD pads and ibuprofen were issued. (ECF No. 45-2 at 84.) On April 13, 2022, Plaintiff was issued an arm sleeve and antibacterial soap. He was issued supplies again on May 26, 2022. (ECF No. 45-2 at 84.)

On April 16, 2022, Plaintiff filed a second level grievance for grievance 20063121291, stating that he had no pain medication. He asked for $100,000, to have his arm fixed and to get supplies. (ECF No. 45-7 at 6.) Dr. Minev responded to the second level grievance on May 6, 2022, noting Plaintiff was seen by the orthopedist on March 21, 2022, and surgery was discussed, with the provider noting that Plaintiff said he would be released in 80 days and the doctor would follow-up with Plaintiff on an as-needed basis if concerns arise or once released for surgical management. The surgeon did not recommend surgery or any change of plan at that time. Plaintiff was instructed to submit his kites in a timely manner to ensure he could pick up his supplies before they run out. (ECF No. 45-7 at 4.)

On June 15, 2022, Plaintiff submitted a kite that he was not getting medical treatment and had no supplies. (ECF No. 45-2 at 101.)

Plaintiff went to the clinic demanding supplies for his arm on June 29, 2022. He was told that he did not have an appointment and needed to submit a kite for an appointment. (ECF No. 45-2 at 84.) He subsequently sent a kite asking about wound care supplies to stop infection and asked to see a doctor. (ECF No. 45-2 at 100, 102.)

Plaintiff submitted emergency grievance 20063139143 on June 29, 2022, asking for wound supplies. Robert Smith responded that it was not a medical emergency, and Plaintiff should submit a kite for further medical issues. (ECF No. 45-13 at 33.) Plaintiff submitted an informal level grievance that same day and said he went to medical to get supplies and was denied treatment and told he would be charged. (ECF No. 45-13 at 24.) Hartman responded on July 12, 2022, with an improper grievance memorandum noting that no harm or loss was indicated, and no remedy requested. (ECF No. 45-13 at 23.)

He sent another kite on July 23, 2022, stating that he had not gotten his supplies and wanted to be reclassified. (ECF No. 45-2 at 99.) He was given supplies on July 25, 2022. (ECF No. 45-2 at 83.)

Plaintiff was seen by a nurse on July 29, 2022, and at that time it was noted that purulent drainage was coming through the holes in the metal. It was minimal, but present when Plaintiff moved or squeezed his arm. The area was cleaned, and a dressing applied. Plaintiff agreed to change the dressing and was given wound care supplies, including gauze, netting, and antibacterial soap. (ECF No. 45-2 at 78, 83.) He was issued antibacterial soap and an arm sleeve on July 31, 2022. It was noted there was no drainage at that time. Plaintiff commented his arm had been like that for five years. (ECF No. 45-2 at 83.)

Plaintiff submitted an informal level grievance for grievance 20063139142 on August 10, 2022, reiterating that he went to medical to get supplies on June 29, 2022, and he was denied treatment and told he would be charged if he wanted supplies. His requested remedy was to get supplies, have his arm fixed, and $250,000. (ECF No. 45-13 at 14.) Hartman responded on August 17, 2022, rejecting the informal level grievance because it did not include all the required

1 documentation and instructed Plaintiff to resubmit with the previously submitted grievance

2 documentation. (ECF No. 45-13 at 12.)

3      Plaintiff sent a kite on September 19, 2022, that he had not received his supplies. He was

4 told that his kite had been reviewed and he was pending scheduling. (ECF No. 45-2 at 98.) On

5 September 29, 2022, gauze, netting, and antibacterial soap were issued. (ECF No. 45-2 at 83.) He

6 sent another kite on October 1, 2022, stating he did not have his supplies, and the response

7 indicates Plaintiff was seen. (ECF No. 45-2 at 97.) He sent additional kites on October 7, 10, 11,

8 and 25, 2022, asking to see a doctor and for pain medication. The responses again indicate

9 Plaintiff was seen. (ECF No. 45-2 at 92, 93, 94.)

10      Henley rejected Plaintiff's grievance 20063139143 on October 7, 2022, because it was

11 untimely. (ECF No. 45-13 at 9.) Plaintiff resubmitted his informal grievance anyway on October

12 25, 2022, and Henley rejected it again as untimely. (ECF No. 45-13 at 2, 4.)

13      On November 18, 2022, Plaintiff was issued supplies until he could see the provider on

14 November 21, 2022. (ECF No. 45-2 at 83.)

15      Plaintiff submitted emergency grievance 20063145251 on November 15, 2022, stating

16 his arm was bleeding and he had not had supplies in months. Tierney responded that Nurse

17 Nomura said she would put Plaintiff down for an appointment to be seen on Thursday. (ECF No.

18 45-14 at 10.) Plaintiff submitted an informal level grievance that same day, stating he was not

19 seen by medical and needed supplies for wound care. (ECF No. 45-14 at 3, 9.) Henley responded

20 with an improper grievance memorandum noting that Plaintiff's grievance was missing the

21 required administrative claim form, which he was instructed to resubmit. (ECF No. 45-14 at 2.)

22

23

Plaintiff submitted emergency grievance 20063145499 on November 21, 2022, stating that he needed to see a doctor as his arm was bleeding. Kyle Day responded it was not a medical emergency, and Plaintiff had an appointment scheduled that day. (ECF No. 45-15 at 2.)

Plaintiff was seen in the NNCC clinic by APRN Villegas on November 21, 2022, to discuss his request to be seen by an orthopedist for surgical intervention which did not happen previously because Plaintiff thought he was going to be released. Plaintiff did not get released, and had run out of dressing supplies. Plaintiff had no active drainage and no obvious signs of infection. Villegas requested an orthopedic evaluation for surgical intervention and issued dressing supplies including antibacterial soap, gauze, antibiotic ointment, and netting in the meantime, and also ordered ibuprofen and Tylenol. (ECF No. 45-2 at 76.)  He submitted the request for a consultation at the same time, which was approved by the Utilization Review Committee on November 30, 2022. (ECF No. 45-2 at 18.)

Plaintiff filed grievance 20063145969 on November 29, 2022, stating that he wanted reclassification for light duty and $100,000. (ECF No. 45-16 at 3.) Henley responded on December 2, 2022, stating that Plaintiff needed to submit a kite to consult with medical staff, and the grievance was missing the required administrative claim form. (ECF No. 45-16 at 2.)

Plaintiff submitted grievance 20063146532 on December 16, 2022, noting that his arm was bleeding, he needed pain medications and wound care supplies, and his arm had an odor. George Davis responded that it did not constitute an emergency and that he needed to kite medical and use the proper channels. (ECF No. 45-5 at 2.)

Plaintiff was seen in the clinic on December 27, 2022, and was ordered medications (naproxen, Tylenol and ibuprofen), an x-ray of the left elbow was ordered, as well as wound supplies. (ECF No. 45-2 at 76.)

An x-ray of the left elbow on December 28, 2022, noted some deformity of the proximal ulna, no obvious joint effusion, and no significant degenerative changes. There was a suggestion of unusual density in the subcutaneous tissue near the olecranon process which could possibly represent calcifications within the triceps tendon. (ECF No. 45-2 at 73.)

Plaintiff was released on parole in January 2023. (ECF No. 45-1 at 15; ECF No. 45-4.)

**B. Qualified Immunity**

"In evaluating a grant of qualified immunity, a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. County of Orange,* 6 F.4th 961, 967-68 (9th Cir. 2021) (citing *Saucier v. Katz,* 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v. Callahan,* 555 U.S. 223 (2009)).

**C. Eighth Amendment**

"The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983." *Colwell v. Bannister,* 753 F.3d 1060, 1066 (9th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976)).

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle*, 429 U.S. at 104. A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

1    If the medical need is "serious," the plaintiff must show that the defendant acted with

2    deliberate indifference to that need. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a high

3    legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference

4    entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by

5    itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at

6    1060. Instead, deliberate indifference is only present when a prison official "knows of and

7    disregards an excessive risk to inmate health or safety; the official must both be aware of the

8    facts from which the inference could be drawn that a substantial risk of serious harm exists, and

9    he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

10    Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally

11    interfere[s] with medical treatment, or it may be shown by the way in which prison officials

12    provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal

13    quotation marks and citation omitted).

14    Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that

15    the delay led to further injury. *Stewart v. Aranas*, 32 F.4th 1192, 1195(9th Cir. 2022) (citing

16    *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)); *McGuckin*, 974

17    F.2d at 1060.

18    "A difference of opinion between a physician and the prisoner—or between medical

19    professionals—concerning what medical care is appropriate does not amount to deliberate

20    indifference." *Snow*, 681 F.3d at 987 (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

21    Instead, to establish deliberate indifference in the context of a difference of opinion between a

22    physician and the prisoner or between medical providers, the prisoner "'must show that the

23    course of treatment the doctors chose was medically unacceptable under the circumstances' and

18

1   that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's

2   health.'" *Snow*, 681 F.3d at 988 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

3   **D. Personal Participation**

4       "42 U.S.C. § 1983 creates a cause of action against a person who, acting under color of

5   state law, deprives another of rights guaranteed under the Constitution." *Jones v. Williams*, 297

6   F.3d 930, 934 (9th Cir. 2002). "In order for a person acting under color of state law to be liable

7   under section 1983 there must be a showing of personal participation in the alleged rights

8   deprivation[.]" *Id*. (citations omitted). In other words, the Plaintiff "must show that each

9   defendant personally played a role in violating the Constitution." *Hines v. Yousef*, 914 F.3d 1218,

10   1228 (9th Cir. 2019), *cert. denied sub nom., Smith v. Schwarzenegger,* 140 S.Ct. 159 (2019)

11   ("inmates must show that each defendant personally played a role in violating the constitution.").

12   **E. Plaintiff has Not Met His Burden under Rule 56 or Local Rule 56-1, and there is No**

13   **Evidence of a Violation of Plaintiff's Eighth Amendment Rights by any of the Defendants**

14       In his response to Defendants' motion, Plaintiff asserts that his Eighth Amendment

15   deliberate indifference claim is proceeding against defendants Rambur, Naughton (incorrectly

16   referenced by Plaintiff again as "Notton"), Nurse Melissa, and Nikky (who has been dismissed

17   without prejudice), and that he states a colorable claim for relief against Defendants Daniels,

18   Minev, Henley (mistakenly referred to by Plaintiff as "Hensely"), Williams, Russell, and Olson

19   under the Eighth Amendment (ECF No. 46 at 7:5-7, 8-12.)

20       Plaintiff's counsel seems to have merely parroted the language used by District Judge Du

21   in the screening order. However, the findings that Plaintiff could proceed with colorable claims

22   were based on the standard for screening, which is the same standard applied to a motion to

23   dismiss under Rule 12(b)(6), which takes the allegations of the pleading as true. To defeat a

1   motion for summary judgment, on the other hand, a plaintiff must demonstrate that there is a

2   genuine dispute of material fact by citing to specific *evidence*.

3           Simply repeating the conclusory allegations of the complaint that defendants Rambur,

4   Dr. Naughton, and Mitchell refused to reinstate his treatment regime and instructed Plaintiff to

5   merely use hand soap, without pointing to any evidence to support these allegations, is

6   insufficient. *See Matsushita*, 475 U.S. at 587; *Celotex*, 477 U.S. at 324.

7           Plaintiff similarly attempts to defeat Defendants' motion as to the supervisory defendants

8   by merely restating the law concerning supervisory liability and the allegations that Daniels,

9   Minev, Henley, Williams, Russell and Olson failed to properly train prison staff about treatment

10  of prisoners with open wounds; they had knowledge Plaintiff was suffering in pain as a result of

11  denial of his treatment regimen and failure to reinstate his treatment regime. Plaintiff fails,

12  however, to cite any evidence to support his position.

13          Plaintiff argues the medical records demonstrate twelve times between May 6, 2021, and

14  December 2, 2022, where Plaintiff had to file a grievance or kite to get his necessary medical

15  supplies. Plaintiff, however, also ignores all of the following evidence of medical care, treatment,

16  and supplies:  on May 5, 2021, Plaintiff's wound was cleaned and he was provided with wound

17  care supplies; on May 19, 2021, he was provided with wound care supplies and the clinic nurse

18  was notified of his request for ibuprofen; Dr. Naughton ordered a consultation with ROC

19  regarding the exposed hardware; Plaintiff was given wound care supplies in June and July 2021

20  and was instructed to use antibacterial soap and water to clean the wound; Plaintiff was provided

21  with wound care supplies in September and October and December 2021; he was instructed to

22  pick up his ibuprofen as a KOP medication; he was given supplies for wound care in January

23  2022; he was seen by medical in February 2022, and had no signs or symptoms of infection and

was ordered medication and wound care supplies; he saw Dr. Kaiser at ROC in March 2022 and elected not to proceed with surgical intervention because he thought he was going to be released from prison; he was issued wound care supplies in March, April and May 2022; when he showed up without an appointment and demanded supplies at the end of June 2022, he was instructed to follow proper protocols to obtain supplies; when he presented with drainage from his wound at the end of July 2022, his wound was cleaned, the dressing changed, and he was issued additional wound care supplies; he was issued wound care supplies following his kite requesting them in September 2022; and was issued additional supplies in November 2022 before he could be seen by the provider; Plaintiff saw a provider on November 21, 2022, and had no signs of infection, but was ordered wound care supplies and medications, and a request for a consultation with the orthopedic specialist was promptly requested; Plaintiff was seen in December 2022, and was ordered medications, wound care supplies and an x-ray of the left elbow was ordered as well.

This evidence belies Plaintiff's allegations that he was consistently denied care during this time period. Importantly, Plaintiff fails to tie any particular alleged denial of care to one of the named Defendants.

In sum, Plaintiff has failed to raise a genuine dispute as to any material fact in order to defeat Defendants' motion for summary judgment. Nevertheless, even relying solely on the evidence submitted by Defendants, there is no evidence of an Eighth Amendment violation.

**1. Rambur**

The evidence reflects that Rambur responded to grievances 20063119570, 2006319726, and 20063133444 by rejecting the grievances on procedural grounds for failing to request a remedy or note factual harm or loss. (ECF No. 45-5 at 19; ECF No. 45-6 at 2, 4; ECF No. 45-11 at 2.) Rambur also responded to emergency grievance 20063126574 on August 30, 2021, noting

that it was duplicative of grievance 2006312121. (ECF No. 45-9 at 2, 5.) Plaintiff could have

resubmitted those grievances so that they could be resolved on a substantive basis, but he did not

do so. Rambur's mere rejection of some of Plaintiff's grievances on procedural grounds does not

reflect deliberate indifference to his serious medical needs.

Finally, on July 8, 2021, Rambur responded to informal level grievance 20063121291 by

partially granting the grievance and noting that Plaintiff was in the process of being scheduled

with ROC and was issued wound care supplies, and instructed Plaintiff to kite medical if he

needed pain medication. (ECF No. 45-7 at 16.) This grievance response likewise fails to

demonstrate deliberate indifference on Rambur's part.

**2. Henley**

Henley's only involvement was in rejecting grievance 20063139143 as untimely;

rejecting grievance 20063145251 as missing the required administrative claim form; and

advising Plaintiff in response to grievance 20063145969 that he needed to submit a kite to

consult with medical staff and noting the grievance was missing the required administrative

claim form. (ECF No. 45-13 at 2, 4; ECF No. 45-14 at 2; ECF No. 45-16 at 2.) There is no

evidence that Henley was deliberately indifferent to Plaintiff's serious medical needs in

responding to these grievances.

**3. Dr. Naughton**

The only evidence of Dr. Naughton's involvement is that in response to Plaintiff's kite

for wound care supplies, Dr. Naughton requested at consult at ROC regarding Plaintiff's exposed

hardware and its possible removal, which was promptly authorized. (ECF No. 45-2 at 33.)

Plaintiff points to no evidence that he went back to Dr. Naughton with concerns about his wound

1   care and that those concerns were disregarded or any other evidence of deliberate indifference on

2   the part of Dr. Naughton.

3       **4. Mitchell**

4       The evidence reflects that Mitchell responded to emergency grievance 20063134800 that

5   it was not a medical emergency, but advised that Plaintiff would be brought to the clinic for

6   further evaluation and treatment that day, and Plaintiff was in fact seen that day. (ECF No. 45-12

7   at 2; ECF No. 45-2 at 78, 84.) This is not evidence of deliberate indifference on Mitchell's part,

8   and Plaintiff points to no other evidence to raise a genuine dispute of material fact that she was

9   deliberately indifferent to his serious medical needs.

10      **5. Minev**

11      Dr. Minev's only involvement was in responding to Plaintiff's second level grievance

12   20063121291 on May 6, 2022, where Plaintiff asserted that he still had a metal plate sticking out

13   of his arm and had no medications, and one week he would get his supplies and the next week he

14   was not allowed. Dr. Minev responded that Plaintiff saw an orthopedic surgeon on April 21,

15   2022 (Dr. Kaiser), where surgery for removal of the hardware was discussed, but Plaintiff

16   advised Dr. Kaiser that he would be released in approximately 80 days. Therefore, the plan was

17   for Dr. Kaiser to follow up with Plaintiff on an as-needed basis. Dr. Minev noted that Dr. Kaiser

18   was not recommending surgery or any other change of plan of care at that time, and advised

19   Plaintiff to timely submit his kites to pick up his supplies before they run out. (ECF No. 45-7 at

20   4.) Plaintiff had been issued ibuprofen on March 24, 2022. (ECF No. 45-2 at 84.) In addition,

21   Plaintiff was issued wound care supplies, including an arm sleeve and antibacterial soap on April

22   13, 2022, and was issued supplies again on May 26, 2022.

23      This is not evidence of deliberate indifference on the part of Dr. Minev.

Plaintiff may contend he should have received additional supplies such as peroxide, but he provides no evidence that the decision to provide him with other supplies was made in conscious disregard to a serious risk to his health. In fact, when Plaintiff saw Dr. Kaiser the month prior to Dr. Minev's grievance response, Plaintiff noted that his hardware had been exposed for the past five years, and on examination there was no evidence of infection, drainage, or erythema. In addition, Defendants provide the expert opinion of Dr. Bates that peroxide is actually antithetical to wound healing, which Plaintiff fails to rebut. (ECF No. 45-3 at 4.)

**6. Daniels, Williams, Russell and Olson**

There is no evidence whatsoever that any of these Defendants had a role in Plaintiff's health care or that they otherwise knew of and disregarded Plaintiff's claims of inadequate care for his wounds.

**F. Conclusion**

Defendants are entitled to summary judgment because Plaintiff has failed to raise a genuine dispute of material fact that any Defendant was deliberately indifferent to his serious medical needs.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Defendants' motion for summary judgment (ECF No. 45) and enter judgment in Defendants' favor.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's

Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: December 6, 2024

_____
Craig S. Denney
United States Magistrate Judge